1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT

9
FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANTE ANTHONY FORTUNATO, III,          Case No.  1:23-cv-00119-JDP (SS)

12            Plaintiff,                    **ORDER**

13        v.                               GRANTING PLAINTIFF'S MOTION FOR
                                           SUMMARY JUDGMENT AND DENYING
14   MARTIN O'MALLEY, Commissioner of      COMMISSIONER'S MOTION FOR
     Social Security,                      SUMMARY JUDGMENT
15
              Defendant.                   ECF Nos. 17 & 19
16

17

18          Plaintiff, who suffers from degenerative disc disease, left shoulder tendonitis, congestive

19   heart failure, coronary artery disease, diabetes, hypertension, and obesity, challenges the final

20   decision of the Commissioner of Social Security ("Commissioner") denying his applications for a

21   period of disability, disability insurance benefits ("DIB"), and supplemental security income

22   ("SSI") under Title II and Title XVI of the Social Security Act.  Plaintiff has moved for summary

23   judgment, and defendant has filed a response asking the court to affirm the denial.  ECF Nos. 17 &

24   19.  Because I find that the ALJ did not properly consider mental limitations when formulating

25   plaintiff's residual functional capacity, plaintiff's motion is granted, and the Commissioner's

26   cross-motion is denied.

27

28

1

**Standard of Review**

2       An Administrative Law Judge's ("ALJ") decision denying an application for disability

3 benefits will be upheld if it is supported by substantial evidence in the record and if the correct

4 legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th

5 Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a

6 preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

7 support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

8       "The ALJ is responsible for determining credibility, resolving conflicts in medical

9 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001)

10 (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,

11 one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

12 *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon

13 which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are

14 constrained to review the reasons the ALJ asserts.").

15       A five-step sequential evaluation process is used in assessing eligibility for Social Security

16 disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant

17 is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or

18 combination of impairments) that qualifies as severe; (3) whether any of the claimant's

19 impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404,

20 Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the

21 claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704

22 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry,

23 while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d

24 949, 953-54 (9th Cir. 2001).

25

**Background**

26       In May 2019, plaintiff protectively filed an application for a period of disability, DIB, and

27 SSI, alleging disability beginning on May 2, 2018. Administrative Record ("AR") 239-48, 259-

28 66. After his applications were denied both initially and upon reconsideration, a hearing was held

before an Administrative Law Judge ("ALJ").  AR 34-86, 89-118.  On December 30, 2021, the ALJ issued a decision finding that plaintiff was not disabled.  AR 8-28.  Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since May 2, 2018, the alleged onset date.

   * * *

3. The claimant has the following severe impairments: Degenerative disc disease; Left shoulder tendonitis; Congestive heart failure; Coronary artery disease; Diabetes mellitus with peripheral neuropathy; Hypertension; and Obesity.

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can occasionally push, pull, and reach overhead with his left upper extremity.  He can frequently climb ramps or stairs, and occasionally climb ladders, ropes, or scaffolds. He can occasionally stoop, and frequently balance, kneel, crouch, and crawl.

   * * *

6. The claimant is capable of performing past relevant work as: teacher aide 2, DOT 249.367-074, light, unskilled (SVP 3); and a composite job of tax preparer, DOT 219.362-070, sedentary, semiskilled (SVP 4), and office manager, DOT 169.167-034, sedentary, skilled (SVP 7).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

   * * *

3

7.  The claimant has not been under a disability, as defined in the
    Social Security Act, from May 2, 2018, through the date of this
    decision.

AR 13-22 (citations to the code of regulations and to one exhibit omitted).

Plaintiff requested review by the Appeals Council, but the request was denied.  AR 1-7, 236-38.  He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that the ALJ erred in three ways: (1) by performing an incomplete analysis at Step 2; (2) by misrepresenting the non-examining state consultants' opinions; and (3) by not explaining whether plaintiff's mental limitations had an impact on the RFC.  ECF No. 17 at 9.  I agree that the ALJ did not adequately consider the limitations imposed by plaintiff's mental impairments when formulating the RFC.  Because remand is warranted on this issue, I decline to address plaintiff's remaining arguments.

**A.      Plaintiff's Mental Limitations**

In December 2019, consultative examining psychologist David C. Richwerger, Ed.D., performed a mental evaluation on plaintiff.  AR 1245-50.  Describing plaintiff's affect and emotional expression, Dr. Richwerger noted that plaintiff appeared "somewhat antsy and agitated," but then calmed "to some degree" and appeared cooperative.  AR 1248.  All other examination findings were normal, including orientation, thought processes, memory, concentration, judgment, fund of knowledge, and ability to do calculations.  AR 1248-49.  Dr. Richwerger diagnosed plaintiff with major depressive disorder, mild to moderate, and recurrent.  AR 1249.  For plaintiff's functional assessment, Dr. Richwerger found that plaintiff had mild impairments in the following areas: performing work activities on a consistent basis; completing a normal workday or workweek without interruption from a psychiatric condition; interacting with coworkers and the public; maintaining regular attendance; and dealing with the usual stresses encountered in competitive work.  AR 1249-50.

At the initial level of review and on reconsideration, the non-examining state psychiatric consultants determined that, in relevant part, plaintiff's depression was a severe mental

4

1   impairment that caused moderate limitations in the following abilities: performing activities

2   within a schedule; maintaining regular attendance; being punctual within customary tolerances;

3   completing a normal workday and workweek without interruptions from psychologically-based

4   symptoms; and performing at a consistent pace without an unreasonable number and length of

5   rest periods.  AR 64-65, 68-69.  In the section of the disability determination report that states

6   "[e]xplain in narrative form the sustained concentration and persistence capacities and/or

7   limitations," the non-examining consultants provided the following narrative: "Mild limitations in

8   maintaining regular attendance and completing workday/workweek."  AR 69, 95-96, 99-101.

9           At the hearing, the ALJ posed a series of hypotheticals to the vocational expert ("VE")

10   that explored the impact of absences from work resulting from a mild limitation in the ability to

11   complete a normal workweek due to psychiatric symptoms.  The first hypothetical mirrored

12   plaintiff's RFC and did not include any mental limitation:

13              [A]ssume a person of claimant's age, education, and work
             experience.  He's limited to light work.  This individual may
14              occasionally push or pull with the left upper extremity.  Frequently
             climb ramps and stairs.  Occasionally climb ladders, ropes, or
15              scaffolds.  Frequently balance, occasionally stoop.  Frequently
             kneel, crouch, crawl.  Occasionally reach overhead with left upper
16              extremity.

17   AR 51.

18           The VE responded that, based on her experience, a person with the restrictions in the

19   above hypothetical would be able to perform plaintiff's past work of tax preparer, office manager,

20   and teacher's aide.  AR 50-53.

21           The ALJ then posed a second hypothetical: "Now, Hypothetical 2, so we have a statement

22   in the file . . . that there might be some problems getting to work every day.  So, if I added to the

23   first hypothetical that the person would be absent one time a month on an ongoing basis, can that

24   person perform any of the claimant's past work?"  AR 53-54.  The VE responded that one

25   absence per month would not change the outcome; the person would be able to still perform

26   plaintiff's past work.  AR 53.

27           In the last hypothetical, the ALJ increased the number of absences to two days each

28   month.  The VE responded that two absences would preclude plaintiff's past work.  AR 54.

1   The ALJ summarized the VE's testimony concerning workplace absences as follows:

2
3          So, one absence, not going to change.  Two absences, Hypo 3,
           can't do the past work.  So, if . . .  a person were moderately
4          limited in their ability to complete a normal work week without
           interruptions from a psych standpoint, . . . *and that means mild*
5          *limitations maintaining regular attendance*.  If that's one day, still
           could do the past work.  If it's two days, can't do the past work.

6   AR 54-55 (emphasis added).

7        **B.      Step-Two Standard**

8        In cases alleging disability due to a mental impairment, the ALJ must assess the severity of

9   impairment by following "a special psychiatric review technique."  *Keyser v. Comm'r of Soc. Sec.*

10  *Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  After determining that a claimant has a medically

11  determinable mental impairment, the ALJ then rates the degree of limitation—none, mild,

12  moderate, marked, or extreme—in four broad functional areas: "[u]nderstand, remember, or apply

13  information; interact with others; concentrate, persist, or maintain pace; and adapt or manage

14  oneself."  20 C.F.R. § 404.1520a(b)-(c).  Generally, if the limitation is rated as "none" or "mild" in

15  the four areas, the impairment is "not severe, unless the evidence otherwise indicates that there is

16  more than a minimal limitation" in the claimant's ability to perform work activities.  20 C.F.R.

17  § 404.1520a(d)(1).

18       At step two, the ALJ assesses whether the claimant has a "medically severe impairment or

19  combination of impairments that significantly limits his ability to do basic work activities."  *Webb*

20  *v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(ii).  The "ability to do

21  basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs."  20

22  C.F.R. § 404.1521(b).  An impairment is "not severe" if the evidence establishes only "a slight

23  abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the

24  ability to do basic work activities."  *Webb*, 433 F.3d at 686 (quotations and citation omitted).  In

25  determining the RFC, however, the ALJ is required to consider all impairments—both severe and

26  non-severe.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[I]n assessing RFC, the

27  adjudicator must consider limitations and restrictions imposed by all of an individual's

28  impairments, even those that are not 'severe.'").

## C.      The ALJ's Decision

The ALJ decided at step two that plaintiff's depression and PTSD resulted in mild limitations in the ability to concentrate, persist, and maintain pace; the ALJ found no other mental limitations in any other functional area.  In determining that plaintiff's mental impairments were not severe, the ALJ considered Dr. Richwerger's opinion that plaintiff's mental impairments caused, at most, mild limitations in his ability to perform work.  The ALJ also considered the opinions of the non-examining state consultants, noting that they had assigned mild limitations in maintaining regular attendance and completing a normal workday or workweek.  The ALJ accepted the examining and non-examining medical source opinions as persuasive, finding that they were supported by, and consistent with, the record.  AR 15-16.

When formulating the RFC, however, the ALJ focused only on plaintiff's physical impairments; there was no discussion of his mental impairments.  In particular, after concluding at step two that plaintiff had mild limitations in the ability to concentrate, persist, and maintain pace, the ALJ did not clarify whether this meant that he was mildly limited in the ability to complete a normal workweek such that he would be absent one day or more each month.[1]  As the ALJ observed at the hearing, the difference between the number of absences was crucial: plaintiff would be able to perform his past work only if his mild limitations caused no more than one absence each month; two absences per month would preclude his past work.  Accordingly, the ALJ erred by not discussing the impact of plaintiff's mild mental limitations when formulating the RFC.  *See Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) ("Regardless of [a mental limitation's] severity . . . the ALJ was still required to consider [plaintiff's] PTSD when he determined [the] RFC."); *see also Craig H. v. Kijakazi*, 2023 WL 4679342, at *12 (S.D. Cal. July 21, 2023) (remanding because "the ALJ's written opinion does not articulate why, after finding that Plaintiff had mild mental limitations in three of four broad paragraph B criteria, he did not include any of those restrictions in the RFC"), *report and recommendation adopted by* 2023 WL

---

[1] The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms is a subset of "sustained concentration and persistence limitations."  *See, e.g.*, AR 68-69.

5340794 (S.D. Cal. Aug. 18, 2023).[2]  Because this error was not harmless, remand is warranted.

**D.      Remand for Further Proceedings**

Given the ALJ's error in determining the RFC, the matter must be remanded for further consideration.  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotations and citations omitted); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

**Conclusion**

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment, ECF No. 17, is granted.

2.  The Commissioner's cross-motion for summary judgment, ECF No. 19, is denied.

3.  The matter is remanded for further proceedings consistent with this order.

4.  The Clerk of Court is directed to enter judgment in plaintiff's favor and close this matter.

IT IS SO ORDERED.

Dated:   ___March 19, 2024___                      _____
                                                                    JEREMY D. PETERSON
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[2] The court notes that in *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022), the Ninth Circuit held that the ALJ's decision was sufficiently supported, even though the ALJ neither accommodated the claimant's mild mental limitations in the RFC nor explained why accommodations were unnecessary.  In upholding the disability denial, the Ninth Circuit specifically noted that the claimant did "not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning."  *Woods*, 32 F.4th at 794.  Unlike the situation in *Woods*, the ALJ in plaintiff's case assigned a mild mental limitation that is ambiguous concerning the expected number of absences per month.  Accordingly, *Woods* does not govern.